UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

v.

DANIEL NOZADZE,

             Defendant.

------------------------------------------------------------X

**MEMORANDUM & ORDER**
23-CR-490 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 21, 2025, Daniel Nozadze ("Defendant") pled guilty to one count of conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4), which was charged under a six-count Indictment. Plea Agreement ("Plea") at ¶ 1, ECF No. 82; *see generally* Indictment, ECF No. 1.[1] The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to time served; one (1) year of supervised release with both the standard and special conditions of supervision; and a $100.00 mandatory special assessment.

**I.    Background**

*Factual Background*

At numerous points between January 2012 and November 2023, Defendant assisted Moris Nozadze ("M. Nozadze"), his father, and Sergo Simonyan ("Simonyan"), M. Nozadze's neighbor, in operating a business where they manipulated or rolled back vehicle odometer mileage readings in exchange for payment. Sealed Presentence Investigation Report ("PSR") at ¶¶ 6–7, ECF No. 102. Vehicle odometers are instruments used for measuring and recording the distance or mileage driven of a vehicle. *Id.* at ¶ 4. Congress determined "that . . . buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle"; buyers are "entitled to rely on the odometer as an accurate indication of the mileage of

---

[1] Citations are to the docket in *United States v. Nozadze*, 23-CR-490. Pincites refer to the ECF page numbers assigned to a filing, where available, and where no ECF heading is present, to the page numbers listed in the original filing.

1

the vehicle" that assists in "deciding on the safety and reliability of the vehicle[.]" 49 U.S.C. § 32701(a).

Defendant and Simonyan personally manipulated or rolled back odometers in exchange for payment. PSR at ¶ 7. Specifically, Defendants manipulated odometers by one of two (or both) methods: (1) decreasing the mileage already shown on the odometer, or (2) installing devices known as "mileage blockers, "mileage stoppers," or "speed filters" (collectively, "Mileage Blocker Devices") to disable odometers and/or reduce the rate at which they accumulated mileage. *See id.* at ¶¶ 6–7; Government Sentencing Memorandum ("Gov't Sent'g Mem.") at 1, ECF No. 122. Defendant also assisted M. Nozadze in communicating with customers and arranging times, locations, and prices for odometer manipulation services. PSR at ¶ 7.

Records from Bank of America regarding Fargo Auto Sales—as well as from Zelle, Block Inc., Venmo, and three undercover transactions—indicate at least 1,159 rollbacks or Mileage Blocker Device installations were conducted between January 2012 and November 2023. *See id.* at ¶ 8. The Government provided a conservative estimated loss totaling $927,200.00. *Id.* The U.S. Probation Office stated it "does not have specific information with respect to the make and model of the vehicles, or the specific details of the various transactions" involved in Defendants' odometer manipulation business and so it "cannot compute an independent loss figure in this case[.]" *Id.* at ¶ 8 n.2. Instead, the Probation Office relied on an estimate prepared by the Government. *Id.* The Government "advised that Courts in many districts have accepted a loss amount of $4,000 or more per vehicle in odometer fraud cases" and so the Government "attributed a $4,000 value inflation to the [sic] each of the 1,159 vehicle

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :
          v.                                                :    MEMORANDUM & ORDER
                                                            :    23-CR-490 (WFK)
DANIEL NOZADZE,                                             :
                                                            :
          Defendant.                                        :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On March 21, 2025, Daniel Nozadze ("Defendant") pled guilty to one count of conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4), which was charged under a six-count Indictment. Plea Agreement ("Plea") at ¶ 1, ECF No. 82; *see generally* Indictment, ECF No. 1.[1] The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to time served; one (1) year of supervised release with both the standard and special conditions of supervision; and a $100.00 mandatory special assessment.

**I.     Background**

*Factual Background*

At numerous points between January 2012 and November 2023, Defendant assisted Moris Nozadze ("M. Nozadze"), his father, and Sergo Simonyan ("Simonyan"), M. Nozadze's neighbor, in operating a business where they manipulated or rolled back vehicle odometer mileage readings in exchange for payment. Sealed Presentence Investigation Report ("PSR") at ¶¶ 6–7, ECF No. 102. Vehicle odometers are instruments used for measuring and recording the distance or mileage driven of a vehicle. *Id.* at ¶ 4. Congress determined "that . . . buyers of motor vehicles rely heavily on the odometer reading as an index of the condition and value of a vehicle"; buyers are "entitled to rely on the odometer as an accurate indication of the mileage of

---

[1] Citations are to the docket in *United States v. Nozadze*, 23-CR-490. Pincites refer to the ECF page numbers assigned to a filing, where available, and where no ECF heading is present, to the page numbers listed in the original filing.

1

the vehicle" that assists in "deciding on the safety and reliability of the vehicle[.]" 49 U.S.C. § 32701(a).

Defendant and Simonyan personally manipulated or rolled back odometers in exchange for payment. PSR at ¶ 7. Specifically, Defendants manipulated odometers by one of two (or both) methods: (1) decreasing the mileage already shown on the odometer, or (2) installing devices known as "mileage blockers, "mileage stoppers," or "speed filters" (collectively, "Mileage Blocker Devices") to disable odometers and/or reduce the rate at which they accumulated mileage. *See id.* at ¶¶ 6–7; Government Sentencing Memorandum ("Gov't Sent'g Mem.") at 1, ECF No. 122. Defendant also assisted M. Nozadze in communicating with customers and arranging times, locations, and prices for odometer manipulation services. PSR at ¶ 7.

Records from Bank of America regarding Fargo Auto Sales—as well as from Zelle, Block Inc., Venmo, and three undercover transactions—indicate at least 1,159 rollbacks or Mileage Blocker Device installations were conducted between January 2012 and November 2023. *See id.* at ¶ 8. The Government provided a conservative estimated loss totaling $927,200.00. *Id.* The U.S. Probation Office stated it "does not have specific information with respect to the make and model of the vehicles, or the specific details of the various transactions" involved in Defendants' odometer manipulation business and so it "cannot compute an independent loss figure in this case[.]" *Id.* at ¶ 8 n.2. Instead, the Probation Office relied on an estimate prepared by the Government. *Id.* The Government "advised that Courts in many districts have accepted a loss amount of $4,000 or more per vehicle in odometer fraud cases" and so the Government "attributed a $4,000 value inflation to the [sic] each of the 1,159 vehicle

2

transactions involved in the scheme." *Id.* To account for "potential overcounting" and "overestimate[s]," the Government reduced its estimate. *Id.*

The Government and the U.S. Probation Office have noted Defendant was not involved in the odometer manipulations associated with the Fargo Auto Sales records, and so those transactions were "not reasonably foreseeable to him." *Id.* at ¶ 11; *see* Gov't Sent'g Mem. at 2–3. Instead, Defendant was responsible for an estimated 554 transactions because he "was still a minor" when M. Nozadze began the business and was only "later recruited . . . into the business." Gov't Sent'g Mem. at 2. The estimated loss attributable to Defendant is $445,600.00. *Id.* at 3; PSR at ¶ 11.

*Procedural History*

On November 28, 2023, a U.S. Grand Jury sitting in the Eastern District of New York returned the six-count Indictment against Defendants, including three counts (Counts 1–2 and 5) against Defendant. Indictment at ¶¶ 12–15, 20–21. On December 13, 2023, Homeland Security and Investigations agents arrested Defendant. PSR at ¶ 10. On March 21, 2025, Defendant pled guilty to Count One of the Indictment, charging him with conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4). Plea at ¶ 1. Pursuant to the Plea, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of 33 months' imprisonment or below. *Id.* at ¶ 4. Pursuant to the Plea, the Government agreed "no further criminal charges will be brought against [Defendant] for, between January 2012 and November 2023, (1) conspiring to commit odometer fraud, as charged in Count One of the Indictment; (2) tampering with motor vehicle odometers, as charged in Count Five of the Indictment, or (3) installing mileage blocker devices, as charged in Count Two of the Indictment . . ." *Id.* at ¶ 5(i).

Additionally, the Government agreed to move to dismiss the remaining counts of the Indictment as to Defendant at the time of sentencing. *Id.*

On February 19, 2025, and May 9, 2025, M. Nozadze and Simonyan respectively pled guilty to Count One of the Indictment, charging each with conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4). M. Nozadze Plea Agreement at ¶ 1, ECF No. 72; Simonyan Plea Agreement at ¶ 1, ECF No. 89. On January 13, 2026, the Court sentenced M. Nozadze to thirty (30) months' imprisonment, one (1) year of supervised release with both the standard and special conditions of supervision, and a $100.00 mandatory special assessment. *See* M. Nozadze Sentencing Memorandum & Order at 1, ECF No. 116. Simonyan's sentencing is set for March 19, 2026. *See* Scheduling Order, ECF No. 120.

## II.     Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines (the "Sentencing Guidelines," or "Guidelines," or "U.S.S.G.") operate as the "starting point and . . . initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a trial court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state—in open court—the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*,

08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

**III.   Analysis**

**A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

*1.   Family and Personal Background*

Defendant was born on January 24, 2002, in Brooklyn, New York to his father (and co-defendant) M. Nozadze and his birth mother, Yanna. PSR at ¶ 37. Defendant's parents separated and divorced shortly after his birth and he remained in the care of his father until he was age eight. *See id.* at ¶ 39. Defendant does not maintain a relationship with his birth mother. *Id.* at ¶ 37. He also does not have a close relationship with his father, and the two do not communicate regularly. *Id.* M. Nozadze has partially paid for Defendant's attorney's fees, although Defense counsel indicated Defendant has been forced to pay a portion of the bills on his

own. *See id.* at ¶ 37; Defendant's Sentencing Memorandum ("Def's Sent'g Mem.") at 5–6, ECF No. 121.

Defendant's father later remarried, after which Defendant, his father, and his stepmother moved to New Jersey. PSR at ¶ 39. Defendant's stepmother had a biological son, and together, Defendant's stepmother and Defendant's father had two daughters. *See id.* at ¶¶ 38–39. Defendant's stepmother reportedly treated him differently from his stepbrother and verbally abused him multiple days per week. *Id.* at ¶ 39. This different treatment included being called inappropriate names, being excluded from family activities, and being given inedible food. *Id.* Defendant stated his father was aware of the abuse yet did not intervene, although Defendant often heard his father arguing with Defendant's stepmother regarding the treatment. *Id.* The verbal abuse continued until Defendant was age sixteen, although he moved out when he was younger. *Id.* at ¶ 39.

When Defendant turned eight, his father and stepmother separated and Defendant began residing with his paternal grandparents in Brooklyn, New York. *Id.* at ¶ 40. Defendant described feeling loved by his grandparents and his upbringing under their care as great. *Id.*

Defendant has never married nor had children, however, he is currently in a romantic relationship with an individual who lives in Brooklyn, New York. *Id.* at ¶¶ 41–42. Defendant's partner is a graduate student, and they share a good relationship that began in 2021. *Id.* at ¶ 42. Defendant's partner is aware of the instant case and remains supportive of him. *Id.* In a telephone interview, Defendant's partner described him as an altruistic, helpful, and compassionate person. *Id.* at ¶ 43. She believes Defendant's arrest helped him understand the severity of his conduct. *Id.* Although she does not assert it serves as an excuse, she believes Defendant's upbringing played a role in his conduct in the instant offense. *Id.* Defendant's

partner reported he has accepted responsibility for his actions, is remorseful, and would like to use his experience to guide other young individuals away from violating the law. *Id.* Defendant's partner, friends, and father submitted letters of support prior to his sentencing hearing. *See* Def's Sent'g Mem. at 6–11.

Defendant has resided with his stepbrother in a two-bedroom, one-bathroom, apartment in Brooklyn, New York since September 2024. PSR at ¶ 44. His father, stepmother, and half-sisters reside in Florida. *Id.* at ¶¶ 37–38.

### 2. *Educational and Employment History*

Defendant earned his high school diploma in June 2020 after attending a school in New York, New York. *Id.* at ¶ 49. Defendant reportedly has experience as an opera singer. *See* Def's Sent'g Mem. at 2–3. When he was approximately age twelve, Defendant began taking opera lessons and thereafter took part in various performances. *Id.* at 3. Defendant was accepted to SUNY Purchase and the Manhattan School of Music, but the COVID-19 pandemic and his inability to afford the tuition prevented his attendance. *Id.*

As previously mentioned, Defendant worked for his father prior to 2017. *See supra* Part I; PSR at ¶ 54. From 2017 to 2019, Defendant was a lifeguard in Brooklyn, New York, and worked full- or part-time depending on whether school was in session. *See* PSR at ¶ 53. From January 2024 to February 2024, Defendant worked as a health coach for a company administering hearing, vision, and dental exams. *Id.* at ¶ 52. Defendant left this position due to his inability to financially support himself on the $20.00 to $50.00 per patient he earned. *Id.* In 2023, Defendant and four other individuals created a business brokering sales of pre-owned and new vehicles. *Id.* at ¶ 50. Defendant's income from this employment fluctuates, but he reported earnings between $3,000.00 to $4,000.00 per month. *Id.* Since 2024, Defendant has also worked

7

"off the books," picking up and delivering vehicles for a dealership in Brooklyn, New York at a rate of $150.00 per day. *Id.* at ¶ 51.

Besides the above employment information, Defendant has not provided a personal financial statement to evaluate his ability to pay a fine. *Id.* at ¶ 59.

3. *Prior Convictions*

Defendant does not have any prior juvenile adjudications or adult criminal convictions. *See id.* at ¶¶ 30–35.

4. *Physical and Mental Health*

Defendant is healthy and has no reported history of serious health issues. *Id.* at ¶ 46. Defendant also reported no history of mental or emotional health conditions, suicidal ideation, or gambling issues. *Id.* at ¶ 47.

5. *Substance Abuse*

Defendant did not report a history of drug use or excessively consuming alcohol. *Id.* at ¶ 48. A drug test conducted on May 6, 2025—as part of Probation's presentence investigation—did not reveal the use of illicit substances. *Id.*

6. *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Defendant engaged in more than 500 fraudulent odometer manipulations, causing an estimated $445,600.00 in losses. PSR at ¶ 11; Gov't Sent'g Mem. at 2. Not only did Defendant cause financial harm, but he also threatened the safety of those who purchased tampered vehicles unaware of their true mileage and threatened other cars on the road. The Court's sentence will deter Defendant and others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the public from Defendant's actions. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of conspiracy to commit odometer fraud in violation of 49 U.S.C. § 32703(4). Plea at ¶ 1.

Defendant faces a maximum term of three years' imprisonment and no minimum term. 49 U.S.C. § 32709(b). Defendant also faces a maximum term of one year of supervised release. 18 U.S.C. §§ 3583(b)(3), 3559(a)(5). If a condition of release is violated, Defendant may be sentenced to up to one year of imprisonment without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. §§ 3583(e). Defendant is eligible for a term of probation of one to five years. 18 U.S.C. § 3561(c)(1). Unless extraordinary circumstances exist, the Court must impose one of the following as a condition of probation: a fine, restitution, or period of community service. 18 U.S.C. § 3563(a)(2).

In addition to facing terms of imprisonment and supervised release, Defendant faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b)(3). Defendant has not demonstrated he is unable to pay a fine. PSR at ¶ 59. The Court is also required to impose a mandatory special assessment of $100.00 pursuant to 18 U.S.C. § 3013(a)(2)(A).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to consider "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The parties agree as to the applicable Guideline provision in this case. All parties agree the applicable guideline is U.S.S.G. § 2N3.1, which directs the Court by way of cross reference to U.S.S.G. § 2B1.1—the Guidelines provision for Theft, Property Destruction, and Fraud—when the offense "involved more than one vehicle." U.S.S.G. § 2N3.1(b)(1); *see* Sealed Second Addendum to PSR ("Am. PSR") at ¶ 20, ECF No. 115; Def's Sent'g Mem. at 15 (referring to U.S.S.G. § 2N3.1); Gov't Sent'g Mem. at 3. U.S.S.G. § 2X1.1—governing Conspiracies, Attempts, and Solicitations—does not apply to Defendant's sentencing because the conspiracy at issue "is expressly covered by another offense guideline section." U.S.S.G. § 2X1.1(c)(1). Instead, Defendant has a Base Offense Level of 6 per U.S.S.G. § 2B1.1. *See* § 2B1.1(a)(2).

The parties agree certain adjustments apply to Defendant's Base Offense Level. First, U.S.S.G. § 2B1.1(b)(1)(G) adds 12 levels because the total loss stemming from the offense, based on the Government's estimates and Defendant's plea agreement, was greater than $250,000.00, but less than $550,000.00. U.S.S.G. § 2B1.1(b)(1)(G); *see* Am. PSR at ¶ 21; Def's Sent'g Mem. at 12; Gov't Sent'g Mem. at 3.

Second, U.S.S.G. § 2B1.1(b)(2)(A)(i) adds 2 levels because the offense involved ten or more victims.[2] U.S.S.G. § 2B1.1(b)(2)(A)(i); *see* Am. PSR at ¶ 21A; Def's Sent'g Mem. at 12; Gov't Sent'g Mem. at 3.

Finally, all parties agree certain reductions apply for Defendant's timely acceptance of responsibility under U.S.S.G. §§ 3E1.1(a)–(b) and because he is a Zero-Point Offender pursuant to U.S.S.G. § 4C1.1. *See* Am. PSR at ¶¶ 26–28; Def's Sent'g Mem. at 12; Gov't Sent'g Mem. at 3. Namely, 3 levels are subtracted because Defendant demonstrated acceptance of responsibility for his offense and did so in a timely fashion. Additionally, Defendant meets the criteria of U.S.S.G. § 4C1.1(a)(1)–(11), and so 2 levels are subtracted. *See* U.S.S.G. § 4C1.1(a). In sum, Defendant's Offense Level is 15.

Defendant's Criminal History Category is I because he has no history of convictions or sentences. *See* U.S.S.G. § 4A1.1; PSR at ¶ 32; Am. PSR at ¶ 61; Def's Sent'g Mem. at 11; Gov't Sent'g Mem. at 3.

Pursuant to the Guidelines Sentencing Table, an Offense Level of 15 and a Criminal History Category of I results in a Guidelines range of eighteen (18) to twenty-four (24) months' imprisonment.

Probation recommends a below-Guidelines sentence of two (2) years' probation and a $100.00 mandatory special assessment. Probation Sentencing Recommendation at 1, ECF No. 102. The Government recommends an unspecified below-Guidelines sentence and, in the event a non-incarceratory sentence or a sentence of time-served is imposed, a term of probation or

---

[2] Initially, the U.S. Probation Office did not include a 2-point enhancement for the number of victims involved. *See generally* PSR. After the Government objected in a sealed filing to the failure to add this enhancement, the U.S. Probation Office issued the Sealed Second Addendum to the PSR and agreed the enhancement applies. *See* Sealed Government Objection to Presentence Investigation Report at 1, ECF No. 104; Am. PSR at 1, ¶ 21A.

11

supervised release including a special condition of 100 hours of community service. Gov't Sent'g Mem. at 5. Defense counsel recommends a below-Guidelines, non-custodial, sentence with one (1) year of supervised release. Def's Sent'g Mem. at 19. This Court appreciates the sentencing arguments raised by all parties and seriously considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). Defense counsel has directed the Court's attention to now-repealed U.S.S.G. § 5H1.1. *See* Def's Sent'g Mem. at 12–13, 18. U.S.S.G. § 5H1.1, which was removed effective November 1, 2025, provided as follows:

> Age may be relevant in determining whether a departure is warranted.
>
> Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.
>
> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.
>
> The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age. Age-appropriate interventions and other protective factors may promote desistance from crime. Accordingly, in an appropriate case, the court may consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing.

12

U.S.S.G. § 5H1.1 (repealed Nov. 1, 2025).

Although repealed, the U.S. Sentencing Commission mentioned the removal of U.S.S.G. § 5H1.1—along with the removal of other departures and policy statements for specific personal characteristics—"does not limit the information courts may consider in imposing a sentence nor does it reflect a view from the Commission that such facts should no longer inform a court for purposes of determining the appropriate sentence." U.S.S.G Ch.3, Pt.A, intro. comment. The U.S. Sentencing Commission has further explained it "envisioned and framed [the] 2025 amendment to be outcome neutral, intending that judges who would have relied upon facts previously identified as a basis for a departure would continue to have the authority to rely upon such facts to impose a sentence outside of the applicable guideline range as a variance under 18 U.S.C. § 3553(a)." *Id.*

The Court acknowledges U.S.S.G. § 5H1.1 and considers its underlying rationale and policy. The parties have not drawn the Court's attention to any other applicable policy statements. Finding no others on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defense counsel has raised certain considerations related to sentencing disparities. First, Defense counsel notes M. Nozadze—the individual who organized the odometer scheme, involved Defendant in the scheme, and principally benefitted from the scheme—received a below-Guidelines sentence of thirty (30) months' imprisonment. *See* Def's Sent'g Mem. at 18. Defense counsel also argues Defendant will suffer collateral consequences while his father will

13

be able to start anew once deported. *Id.* at 18–19. These potential collateral consequences include ineligibility for student loans, the loss of Defendant's current business if he loses his driving license, restricted access to business loans, and ineligibility for government assistance. *Id.* at 18; *see also* PSR at ¶ 74. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in this case. 18 U.S.C. § 3663.

### IV. Conclusion

For the reasons set forth above, the Court sentences Defendant to time served; one (1) year of supervised release with both the standard and special conditions of supervision; and a $100.00 mandatory special assessment. This sentence is sufficient, but not greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's present financial circumstances.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addenda thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: February 2, 2026
      Brooklyn, New York